1

2

3

4

5

6

7

8 UNITED STATES DISTRICT COURT

9 NORTHERN DISTRICT OF CALIFORNIA

10 San Francisco Division

11

12 JMT CAPITAL HOLDINGS, LLC,

Plaintiff,

13

v.

14

DOUGLAS W. JOHNSON, et al.,

15

Defendants.

16

Case No. 3:15-cv-00291-LB

**ORDER GRANTING IN PART AND DENYING IN PART THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

[Re: ECF No. 23]

17 **INTRODUCTION**

18 The plaintiff JMT Capital Holdings, LLC ("JMT") agreed to loan money to non-party Johnson

19 Plate and Tower Fabrication, Inc. ("Johnson Plate") in 2013. At the same time, the defendants

20 Douglas Johnson and Peter Johnson agreed to guarantee the loan in the event Johnson Plate

21 defaulted. Johnson Plate defaulted, and JMT sued the defendants to recover the money it loaned to

22 Johnson Plate. JMT now moves for early summary judgment. The court grants in part and denies

23 in part JMT's motion.

24 **STATEMENT**

25 **I. FACTS**

26 Johnson Plate is a Texas limited liability company that manufactured wind turbine towers.

27 (Declaration of Douglas W. Johnson In Support of Defendants' Opposition to Plaintiff's Motion

28

for Summary Judgment ("Johnson Decl."), ECF No. 28-1 ¶ 1.[1]) Douglas Johnson is the owner and President of Johnson Plate. (*Id.* ¶ 2.) On September 24, 2013, Johnson Plate entered into a contract (the "Gamesa Tower Supply Agreement") with Gamesa Wind US LLC ("Gamesa"). (*Id.* ¶ 5 & Ex. C.) Essentially, Johnson Plate agreed to sell and manufacture homologation wind towers for Gamesa, and in exchange, Gamesa agreed to provide down payments and additional payments for any additional towers that were ordered. (*Id.* ¶ 5 & Ex. C.) Under that contract, once a purchase order was made by Gamesa, Gamesa would pay Johnson Plate a 30% down payment.[2] (*Id.* ¶ 7 & Ex. C.) According to Douglas Johnson, until Gamesa made that down payment, Johnson Plate needed capital to build the towers that would meet Gamesa's technical specifications and inspection criteria. (*Id.*)

That is where JMT comes in.[3] On October 1, 2013, Johnson Plate executed a Secured Promissory Note (the "Note") in favor of JMT whereby JMT agreed to loan Johnson Plate $530,000 plus interest. (Compl., ECF No. 1 ¶ 6 & Ex. A; Amended Answer, ECF No. 12 ¶ 6; Johnson Decl., ECF No. 28-1 ¶ 3.) The $530,000 "consists of the following upon its disbursement to [Johnson Plate] by [JMT]:

    a. $200,000.00 is the first distribution to be applied to operational expenses;
    b. $200,000.00 is available for distribution 30 days from signing, subject to providing signed contracts for more towers;
    c. $100,000.00 stays in reserve in case of default ("Interest Reserve"); and
    d. $30,000.00 representing a Six point fee associated with this Note.
       i. (6 Points) as non-refundable prepaid, together with 24% simple and non-compounded A.P.R. interest accruing hereafter for the amount of Principal disbursed from time to time to [Johnson Plate] by [JMT] for twelve months (12) months [sic] after the date hereof . . . .

---

[1] Record citations are to documents in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the tops of the documents.

[2] Gamesa would pay the remaining 70% after Johnson Plate delivered the tower and Gamesa accepted it. (Johnson Decl., ECF No. 28-1, Ex. C.)

[3] JMT is a limited liability company whose principal place of business is in Utah. (Compl., ECF No. 1 ¶ 1.) Its members are: (1) JGT Holdings, LLC, a Utah limited liability company whose principal place of business is in Utah and whose sole member is Jacob G. Taylor, a resident of Highland, Utah; (2) MAWLG Holdings, LLC, a Utah limited liability company whose principal place of business is in Utah and whose sole member is Matthew Sterzer, a resident of Highland, Utah; and (3) Entelecus Fund, LLC, a Utah limited liability company whose principal place of business is in Utah and whose sole member is Travis Kozlowski, a resident of Draper, Utah. (*Id.*)

United States District Court
Northern District of California

1  (Compl., ECF No. 1, Ex. A.) The parties agreed that Johnson Plate would "pay to [JMT] Interest

2  only payments starting November 1st 2013 in the amount of [$10,600.00] per month," but the

3  parties also agreed that "the first Six (6) months of payments will be deferred and paid in one

4  lump payment on Month Six April 1st 2014 in the amount of [$63,600.00] for the first Six months

5  of Interest only payments." (*Id.*) The parties further agreed that "[o]n month seven on, the payment

6  will be [$10,600.00] per month." (*Id.*) The parties also agreed that "[t]he entire outstanding

7  balance of this Note, together with all interest accrued thereon," would be made "in one payment

8  due October 1st, 2014." (*Id.*)

9       Also on October 1, 2013, "in consideration of, and in order to induce [JMT] to make the

10  [$530,000 loan to Johnson Plate]," Douglas and Peter executed a guaranty (the "Guaranty") in

11  favor of JMT in which they agreed to "unconditionally and jointly and severally guarantee[] the

12  payment, when due, of the indebtedness of [Johnson Plate] to [JMT] or its order evidenced by the

13  Note or any other Loan Document and to perform any and all obligations of [Johnson Plate] under

14  the terms of any Loan Documents." (*Id.* ¶ 7 & Ex. B; Amended Answer, ECF No. 12 ¶ 7.) JMT

15  also points to two other provisions in the Guaranty.

16         3.   <u>Alternation of Obligations</u>. In such manner, upon such terms and at such
times as [JMT] and [Johnson Plate] deem best and without notice to any Guarantor,
[JMT] and [Johnson Plate] may alter, compromise, accelerate, extend, renew or
change the time or manner for the payment of any indebtedness or the performance
of any obligation hereby guaranteed, increase or reduce the rate of interest of the
Note, release [Johnson Plate], as to all or any portion of the obligations hereby
guaranteed, release, substitute or add any one or more guarantors or endorsers,
accept additional or substituted security therefore, or release or subordinate any
security therefore. No exercise or non-exercise by [JMT] of any right available to
[JMT] . . . shall in any way affect any of the obligations of any Guarantor hereunder
or any security furnished by any Guarantor or give any Guarantor any recourse
against Lender. Each Guarantor acknowledges that its obligations hereunder are
independent of the obligations of [Johnson Plate].

23         4.   <u>Waiver</u>. To the extent permitted by law, each Guarantor hereby waives and
relinquishes all rights and remedies accorded by applicable law to guarantors and
agrees not to assert or take advantage of any such rights or remedies, including
(without limitation)[:]

26  (a) any right to require [JMT] to proceed against [Johnson Plate] or any other
person or to pursue any other remedy in [JMT's] power before proceeding against
such Guarantor;

28  (b) the defense of the statute of limitations in any action hereunder or in any action
for the collection of any indebtedness or the performance of any obligation hereby

1

guaranteed;

2

(c) any defense that may arise by reason of the incapacity, lack of authority, death or disability of any other person or persons or the failure of [JMT] to file or enforce a claim against the estate (in administration, bankruptcy or any other proceeding) of any other person or persons;

3

4

(d) demand, protest and notice of any kind, including, without limitation, notice of the existence, creation or incurring of any new or additional indebtedness or obligation or of any action or non-action on the part of [Johnson Plate], [JMT], any endorser or creditor of [Johnson Plate] or any Guarantor or on the part of any other person whomsoever under this or any other instrument in connection with any obligation or evidence of indebtedness held by [JMT] as collateral or in connection with any indebtedness hereby guaranteed;

5

6

7

8

(e) any defense based upon an election of remedies by [JMT] which may destroy or otherwise impair the subrogation rights of such Guarantor or the right of such Guarantor to proceed against [Johnson Plate] for reimbursement, or both;

9

10

(f) any defense based upon any statute or rule of law which provides that the obligation of a surety must be neither larger in amount nor in other respects more burdensome than that of the principal;

11

12

(g) any duty on the part of [JMT] to disclose to such Guarantor any facts [JMT] may now or hereafter know about [Johnson Plate], regardless of whether [JMT] has reason to believe that any such facts materially increase the risk beyond that which such Guarantor intends to assume or has reason to believe that such facts are unknown to such Guarantor or has a reasonable opportunity to communicate such facts to such Guarantor, since such Guarantor acknowledges that it is fully responsible for being and keeping informed of the financial condition of [Johnson Plate] and of all circumstances bearing on the risk of non-payment of any indebtedness hereby guaranteed;

13

14

15

16

17

(h) any defense arising because of [JMT's] election, in any proceeding instituted under the Federal Bankruptcy Code, of the application of Section 1111(b)(2) of the Federal Bankruptcy Code;

18

19

(i) any defense based on any borrowing or grant of a security interest under Section 364 of the Federal Bankruptcy Code;

20

21

(j) any claim, right or remedy which any Guarantor may now have or hereafter acquire against [Johnson Plate] that arises hereunder and/or from the performance by any Guarantor hereunder, including, without limitation, any claim, right or remedy of [JMT] against [Johnson Plate] or any security which [JMT] now has or hereafter acquires, whether or not such claim, right or remedy arises in equity, under contract, by statute, under common law or otherwise; and

22

23

24

(k) any obligation of [JMT] to pursue any other guarantor or any other person, or to foreclose on any collateral.

25

26

(Compl., ECF No. 1, Ex. B.[4])

27

28

---

[4] In the original text of the "Waiver" paragraph of the Guaranty, examples (a) through (k) are not set off from each other as quoted above. The court has altered the structure of the paragraph for

United States District Court
Northern District of California

When Johnson Plate entered into the Note, it needed all of the $530,000 from JMT to manufacture the towers for Gamesa. (Johnson Decl., ECF No. 28-1 ¶ 3.) JMT knew that Johnson Plate had contracted with Gamesa to manufacture the towers, and Johnson Plate planned to use the income generated from the Gamesa Tower Supply Agreement to pay back the loan from JMT. (*Id.* ¶ 6.)

JMT disbursed to Johnson Plate $50,000 on September 27, 2013, $145,000 on October 7, 2013, and $20,000 on December 18, 2013. (Compl., ECF No. 1 ¶ 8; Amended Answer, ECF No. 12 ¶ 8.) As of December 18, 2013, then, JMT had disbursed a total of $215,000 to Johnson Plate. That same month (December 2013), even though JMT had disbursed only $215,000 of the $530,000 specified in the Note, Travis Kozlowski, the owner of JMT, told Douglas Johnson that JMT was no longer interested in fulfilling its remaining obligations to disburse money to Johnson Plate under the Note. (Johnson Decl., ECF No. 28-1 ¶ 10.) JMT in fact stopped providing Johnson Plate with loan disbursements in December 2013. (*Id.*) Johnson Plate would not have entered into the Note if it known that JMT was not going to provide the full loan amount of $530,000. (*Id.* ¶ 4.)

Johnson Plate began work for Gamesa in January 2014. (*Id.* ¶ 11.) Because JMT stopped disbursing money to Johnson Plate under the Note the previous month, Douglas Johnson was forced to find other ways to fund Johnson Plate so that it could fulfill its obligations to Gamesa. (*Id.* ¶ 12.) In April 2014, Douglas Johnson was forced to ask Gamesa for a loan so that Johnson Plate could complete the first phase of its project for Gamesa. (*Id.*) After Gamesa found out that Johnson Plate was no longer receiving money from JMT, Gamesa feared that Johnson Plate was not sufficiently financially viable to fulfill its obligations pursuant to the Gamesa Tower Supply Agreement and decided not to exercise its option under the Agreement to order subsequent towers from Johnson Plate. (*Id.* ¶ 13.) Douglas Johnson again had to find funds to continue operating Johnson Plate and save the Gamesa deal. (*Id.* ¶ 14.) He "cashed in" his 401K plan and sold personal properties, worked at the Johnson Plate plant without pay, and took out personal loans at or around a 50% interest rate to meet Johnson Plate's remaining payroll. (*Id.*)

visual accessibility.

The defendants admit that Johnson Plate made no payments under the Note, but they dispute whether Johnson defaulted under it because they contend that JMT anticipatorily breached the Note before Johnson Plate's payments first became due on April 1, 2014. (Compl., ECF No. 1 ¶ 9; Amended Answer, ECF No. 12 ¶ 9; Johnson Decl., ECF No. 28-1 ¶¶ 9-10.) On October 7, 2014, Johnson Plate instituted a Chapter 11 bankruptcy action, which later was converted to a Chapter 7 bankruptcy action, in the United States Bankruptcy Court for the Western District of Texas. (Compl., ECF No. 1 ¶ 9; Amended Answer, ECF No. 12 ¶ 9; Motion, ECF No. 23, Ex. C[5]; Johnson Decl., ECF No. 28-1 ¶ 16.) As part of that bankruptcy action, Johnson Plate submitted various schedules, which Johnson Plate amended two times. (Motion, ECF No. 23, Exs. A, B, D.) In those schedules, Johnson Plate listed JMT as a creditor holding a secured claim in the amount of $215,000. (*Id.*) Johnson Plate did not list the claim as contingent, unliquidated, or disputed. (*Id.*) Johnson Plate also did not list any claim against JMT among its assets. (*Id.*) Johnson Plate's schedules all were signed by Douglas Johnson in his capacity as President of Johnson Plate. (*Id.*)

Sometime thereafter, in connection with reviewing its claim against Johnson Plate, JMT became aware of terms in the Note that may have been in violation of Texas usury laws. (Compl., ECF No. 1 ¶ 10; Amended Answer, ECF No. 12 ¶ 10.) On December 8, 2014, JMT sent a usury correction letter (the "Correction Letter") to Johnson Plate and its bankruptcy counsel which JMT says corrected certain terms in the Note. (Compl., ECF No. 1 ¶ 11; Amended Answer, ECF No. 12 ¶ 11.) The defendants dispute that the Correction Letter actually corrected the usurious terms. (Amended Answer, ECF No. 12 ¶ 11.)

*          *          *

## II. PROCEDURAL HISTORY

JMT instituted this action by filing its Complaint against Douglas Johnson and Peter Johnson

---

[5] JMT attached to its motion four exhibits: (1) Johnson Plate's bankruptcy schedules dated October 7, 2014; (2) Johnson Plate's amended bankruptcy schedules dated December 10, 2014; (3) an order issued by the bankruptcy court converting Johnson Plate's bankruptcy from one under Chapter 11 to one under Chapter 7; and (4) Johnson Plate's amended bankruptcy schedules dated March 18, 2015. (Motion, ECF No. 23, Exs. A-D.) JMT did not authenticate these documents with a declaration, nor has it asked the court to take judicial notice of them as public records. Nevertheless, as their authenticity is not disputed by the defendants, the court considers them for purposes of JMT's motion.

United States District Court
Northern District of California

in this court on January 21, 2015. (Compl., ECF No. 1.) JMT alleges that, pursuant to the Note, the Guaranty, and the Correction Letter, it is entitled to recover the following amounts, jointly and severally, from the defendants: (1) principal in the amount of $215,000; (2) a 6-point origination fee on the principal amounts disbursed in the amount of $12,900; (3) 12% per annum interest on the principal amounts disbursed from the date of disbursement to January 21, 2015, in the amount of $32,685.52; (4) 12% per annum interest in the amount of $70.68 per diem after January 21, 2015, until entry of judgment; (5) attorney's fees of not less than $5,000 to be augmented by additional fees incurred pre- and post-judgment for enforcement of the Guaranty and collection of amounts due; (6) costs incurred in this action; and (7) post-judgment interest on the aggregate amounts adjudged to be owed under the applicable statutory rate. (*Id.* ¶ 13.)

The defendants answered the Complaint. (Answer, ECF No. 6; Amended Answer, ECF No. 12.) They assert as affirmative defenses, among others, that JMT's claims are barred because the Note contained usurious terms and because JMT anticipatorily breached the Note. (Amended Answer, ECF No. 12 ¶¶ 16, 18.)

On the day of the initial case management conference, and before the parties had commenced discovery, JMT filed an early motion for summary judgment. (Motion, ECF No. 23; Initial CMC Minute Order, ECF No. 24.) The defendants thereafter filed an opposition, and JMT filed a reply. (Opposition, ECF No. 28; Reply, ECF No. 31.) The court held a hearing on JMT's motion on June 18, 2015. (6/18/2015 Minute Order, ECF No. 33.)

\* \* \*

## ANALYSIS

## I. LEGAL STANDARD

The court must grant a motion for summary judgment if the movant shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Material facts are those that may affect the outcome of the case. *Anderson*, 477 U.S. at 248. A dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Id.* at 248-49.

The party moving for summary judgment bears the initial burden of informing the court of the basis for the motion, and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000); *see Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) ("When the nonmoving party has the burden of proof at trial, the moving party need only point out 'that there is an absence of evidence to support the nonmoving party's case.'") (quoting *Celotex*, 477 U.S. at 325).

If the moving party meets its initial burden, then the burden shifts to the non-moving party to produce evidence supporting its claims or defenses. *Nissan Fire & Marine Ins. Co., Ltd.*, 210 F.3d at 1103. The non-moving party may not rest upon mere allegations or denials of the adverse party's evidence, but instead must produce admissible evidence that shows there is a genuine issue of material fact for trial. *See Devereaux*, 263 F.3d at 1076. If the non-moving party does not produce evidence to show a genuine issue of material fact, the moving party is entitled to summary judgment. *See Celotex*, 477 U.S. at 323.

In ruling on a motion for summary judgment, inferences drawn from the underlying facts are viewed in the light most favorable to the non-moving party. M*atsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

*   *   *

## II. APPLICATION

### A.  JMT Has Made a Prima Facie Showing on Its Claim against the Defendants for Breaching the Guaranty

JMT first asks the court to rule that it has made a prima facie showing on its claim against the

ORDER (No. 3:15-cv-00291-LB)

defendants for breaching the Guaranty. Under Texas law[6], to make such showing, JMT must establish "(1) the existence and ownership of the Guaranty, (2) the terms of the Note underlying the Guaranty, (3) the occurrence of the conditions upon which liability is based, that is, default under the Note, and (4) [the guarantor's] failure or refusal to perform the Guaranty's promise." *Holmes v. Graham Mortg. Corp.*, 449 S.W.3d 257, 263 (Tex. App. 2014) (citing *Gold's Gym Franchising LLC v. Brewer*, 400 S.W.3d 156, 160 (Tex. App. 2013)); *see also Jamshed v. McLane Express, Inc.*, 449 S.W.3d 871, 877 (Tex. App. 2014) (applying the same elements).

The undisputed evidence supports a conclusion that JMT has established these elements. The parties do not dispute the following: (1) JMT and the defendants entered into the Guaranty; (2) the terms of the Note are clear; (3) Johnson Plate did not make payments on the Note; and (4) the defendants have not paid JMT, either. The court notes that the defendants never say in their opposition whether they oppose JMT's argument that it has conclusively established its prima facie case, and they conceded at the hearing that they do not. Accordingly, based on the undisputed evidence before it, the court concludes that JMT has made a prima facie showing on its claim against the defendants for breaching the Guaranty.

\*        \*

**B.  The Defendants' Usury Affirmative Defense Fails as a Matter of Law**

JMT next asks the court to rule that the defendants' usury affirmative defense fails. It cites authority that makes clear that "[a]s a matter of Texas law, a guarantor does not have standing to assert a usury cause of action." *Bair Chase Prop. Co., LLC v. S & K Dev. Co., Inc.*, 260 S.W.3d 133, 145 (Tex. App. 2008) (citing *El Paso Refining, Inc. v. Scurlock Permian Corp.*, 77 S.W.3d 374, 384 (Tex. App. 2002)); *see also Ginsberg 1985 Real Estate P'ship v. Cadle Co.*, 39 F.3d 528, 534 (5th Cir. 1994) ("Texas law does not permit a guarantor to escape its obligation by asserting a usury defense based on a usurious principal obligation."). This is because "[a] usury defense is personal to the debtor and may not be asserted by a guarantor unless the guaranty agreement also contains the usurious provision." *Bair*, 260 S.W.3d at 146 (citing *Ginsberg*, 39 F.3d at 534;

---

[6] Paragraph 16.1 of the Guaranty provides that "[t]he Guaranty shall be governed by and construed in accordance with the laws of the State of Texas." (Compl., ECF No. 1, Ex. B.)

*Houston Sash & Door Co., Inc. v. Heaner*, 577 S.W.2d 217, 222 (Tex. 1979)).

In this action, Johnson Plate is the debtor, and the defendants are the guarantors, so any usury defense is personal to Johnson Plate and may not be asserted by the defendants. The Guaranty also is a so-called "guaranty of payment" (or "unconditional guaranty"), whereby the defendants are "primarily liable and waive[ ] any requirement that [JMT] take action against [Johnson Plate] as a condition precedent to [the defendants'] liability." *Jamshed*, 449 S.W.3d at 879-80. The defendants do not address JMT's arguments or cited authority in their opposition, and they conceded the point at the hearing. Thus, on the basis of the authority cited by JMT, and in light of the defendants' concession, the court concludes that the defendants' usury affirmative defense fails as a matter of law. The court grants JMT's motion on this ground.

\*          \*

### C.  The Defendants' Anticipatory-Breach Affirmative Defense Does Not Fail at the Summary-Judgment Stage

The defendants assert that JMT's anticipatory breach of the Note is an affirmative defense. (Amended Answer, ECF No. 12 ¶ 16.) JMT argues that this affirmative defense fails. It first argues that the defendants cannot assert this affirmative defense at all because it is "personal" to Johnson Plate. It next argues that the defendants waived any right to assert this affirmative defense in the Guaranty. Finally, it argues that, even if the defendants may assert this affirmative defense here, the defendants have not presented sufficient evidence to establish it. The court rejects all of JMT's arguments.

As for JMT's first argument, it is correct that a guarantor cannot simply assert all of the defenses that might be available to a debtor. As the Fifth Circuit has noted when discussing Texas law regarding the relationships among a creditor, a debtor, and a guarantor, "[a]n analysis of the liability of the guarantor vis-a-vis the liability of the [debtor] clearly indicates that a guarantor does not step into the [debtor's] shoes and thereby acquire all his rights and privileges." *United States v. Little Joe Trawlers, Inc.*, 776 F.2d 1249, 1252 (5th Cir. 1985) (citing Conner, Enforcing Commercial Guaranties in Texas: Vanishing Limitations, Remaining Questions, 12 Tex. Tech. L. Rev. 785, 817-827 (1981)). Indeed, "[w]hile the extent of a guarantor's liability certainly does not

exceed the [debtor's] underlying obligation, the actual liability of the guarantor may exist even when the [debtor] himself is not liable on the note." *Id.* (citing H*opkins v. First Nat'l Bank at Brownsville*, 551 S.W.2d 343, 345 (Tex. 1977)). This is because "a note and a guaranty of payment are separate undertakings," *Hopkins*, 551 S.W.2d at 345, whereby the "guaranty creates a secondary obligation under which the guarantor promises to answer for the debt of another and may be called upon to perform once the primary obligor fails to perform," *Jamshed*, 449 S.W.3d at 877.

One result of this relationship is that a guarantor may not raise defenses that are "personal" to the debtor. *See Houston Sash and Door*, 577 S.W.2d at 222 (assertion of statutory usury defense is personal to principal obligor); *Universal Metals and Mach., Inc. v. Bohart*, 539 S.W.2d 874, 879 (Tex. 1976) (guarantor was held liable even when the underlying obligation was unenforceable against debtor because the debtor's signature was a forgery); *Wiman v. Tomaszewicz*, 877 S.W.2d 1, 6 (Tex. App. 1994) (guarantor could be liable even though the statute of limitation barred an action against principal obligor); *see also Sunbelt Sav., FSB, Dallas, Texas v. Birch*, 796 F. Supp. 991, 995 (N.D. Tex. 1992) ("Guarantors, however, are estopped from asserting defenses personal to the borrower."); *cf. FSLIC v. Griffin*, 935 F.2d 691, 700 (5th Cir. 1991) ("Usury is a personal defense and may not be asserted by a guarantor unless the contract with the guarantor also contains the usurious provision."). That a guarantor may not raise defenses that are "personal" to the debtor, however, is an exception to the "general rule [that] allows a guarantor of a note to assert defenses to the guaranteed obligation that the [debtor] could assert." *Wiman*, 877 S.W.2d at 6 (citing *Mayfield v. Hicks*, 575 S.W.2d 571, 574 (Tex. App. 1978) (noting the "general rule that guarantors have the right to raise any defenses to the guaranteed obligation that the principal may have"); *Stephens v. First Bank of & Trust of Richardson*, 540 S.W.2d 572, 574 (Tex. App. 1976) ("A surety or guarantor can assert any defense to a suit on a note available to the principal.")); *see also First Gibralter Bank v. Bradley*, 98 F.3d 1338, at *6 (5th Cir. 1996) (unpublished) (citing this general rule and stating that the defendants "do have standing as guarantors of the loans to assert the defenses that would have been available to the borrowers").

So have Texas courts found an anticipatory-breach affirmative defense to be personal to a

debtor such that a guarantor may not assert it? No. JMT acknowledges this in its motion and asks the court to extend Texas law to do so. It cites opinions where Texas courts have found certain defenses to be personal to the debtor, but the reasoning of those decisions is limited to the particular defenses raised. *See Houston Sash and Door*, 577 S.W.2d at 222 (assertion of statutory usury defense is personal to principal obligor); *Universal Metals*, 539 S.W.2d at 876-78 (defense that the debtor's signature was a forgery is personal to the debtor); *Arndt v. Nat'l Supply Co.*, 633 S.W.2d 919, 923 (Tex. App. 1982) (holding that a guarantor was not entitled to raise as a defense the fact that the individual who signed the note on behalf of the debtor lacked authority to do so because such a defense, like the defense that a debtor's signature on the note was a forgery, is personal to the debtor); *see also Little Joe Trawlers*, 776 F.2d at 1252 (defense of non-receipt of notice of intent to accelerate is personal to a debtor).[7] Moreover, unlike the defenses raised in those opinions, the affirmative defense—that the creditor anticipatorily breached the underlying note and therefore caused the debtor to be unable to perform (thus triggering the guaranty)— necessarily relates to the performance of both the note and the guaranty. By contrast, the acts forming the basis of the personal defenses cited above did not affect the debtors' abilities to perform their obligations under the notes. The acts forming the basis of the defendants' anticipatory-breach affirmative defense here allegedly did exactly that.

Accordingly, in light of the general rule that a guarantor of a note may assert defenses to the

---

[7] The court notes that JMT cites *Hopkins* for the holding that a defense that a debtor's signature is a forgery is personal to the debtor, but *Hopkins* does not hold this. *See* 551 S.W.2d at 345. Instead, *Hopkins* merely uses that defense as an example of one that is personal to a debtor and cites *Universal Metals*'s holding on this point. *Id.* The court also notes that JMT cites *Sunbelt Savings FSB, Dallas, Texas v. Birch* as an example of a Texas court that ruled that a defense based on the breach of the covenant of good faith and fair dealing is personal to a debtor, but that opinion, which was issued by a district court sitting in Texas and not a Texas state court, holds no such thing. *See* 796 F. Supp. 991 (N.D. Tex. 1992). The district court's discussion of personal defenses is limited to usury defenses. *Id.* at 995. In that case, the guarantors' breach of the covenant of good faith and fair dealing defense failed because the guarantors could not meet an element of that defense (that a special relationship existed between the parties to the contract). *Id.* at 996. Finally, the court also notes that JMT cites *Hart v. First Federal Savings & Loan Association* as an example of a Texas court that ruled that a defense based on unfair trade practices statutes is personal to a debtor. *See* 727 S.W.2d 723, 727 (Tex. App. 1987). The court in *Hart*, however, ruled that the guarantors waived their right to assert such a defense and, in addition, could not assert the defense because of a general rule requiring the joinder of the debtor that applied in those circumstances. *Id.*

12

guaranteed obligation that the debtor could assert, as well as the lack of Texas authority holding that anticipatory breach is an affirmative defense that is personal to a debtor, the court concludes that the defendants may assert this defense.

Even so, JMT argues that, even if the defendants theoretically may be able to assert an anticipatory-breach affirmative defense, they waived their right to do so in the Guaranty. The assertion of the debtor's defenses is an equitable right which may be circumscribed by the terms of the guaranty. *See Holmes v. Graham Mortg. Corp.*, 449 S.W.3d 257, 264-65 (Tex. App. 2014); *Hart v. First Fed. Sav. & Loan Ass'n*, 727 S.W.2d 723, 727 (Tex. App. 1987).  And "'the intention of the parties will govern' the issue when a guarantor claims the benefit of the principal debtor's claim against his creditor." *Hart*, 727 S.W.2d at 727. For example, in *Holmes*, the Texas appellate court held that the guarantor waived his right to assert defenses of judicial estoppel, accord and satisfaction, unjust enrichment, cancellation of debt, illegality, equitable estoppel, and promissory estoppel when the guaranty he signed said that he "shall not be released . . . by reason of the illegality or unenforceability of all or any part of the indebtedness represented by the Note as against Borrower or Guarantor based on usury or other legal defenses, statutory or otherwise, and Guarantor hereby to the maximum extent permitted by applicable law expressly waives and surrenders any defense to liability hereunder based upon the foregoing acts, things, agreements or waivers, or any of them." 49 S.W.3d at 264-65. Similarly, in *Hart*, the Texas appellate court held that the guarantors were not entitled to a set-off where they undertook in the guaranty to remain "fully liable" for the debtor's debt "notwithstanding the fact that the Debtor may not be liable" for the debt because of any of several specified reasons "or . . . for any other reason." 727 S.W.2d at 727.

Here, JMT contends that the defendants waived their right to assert an anticipatory-breach affirmative defense in the Guaranty's "Alteration of Obligations" and "Waiver" paragraphs. The "Alteration of Obligations" paragraph, however, has nothing to do with the waiver of any rights by the defendants. To the extent that JMT mentions it to point out that the guarantors' obligations under the Guaranty are independent of Johnson Plate's obligations under the Note, fine, but that is not the issue. The issue is whether the "Waiver" paragraph waives as much as JMT says it does. In

13

United States District Court
Northern District of California

that paragraph, the defendants agreed, "[t]o the extent permitted by law, . . . [to] waive[ ] and relinquish[ ] all rights and remedies accorded by applicable law to guarantors and agree[d] not to assert or take advantage of any such rights or remedies, including (without limitation)" the enumerated defenses set forth above and which the defendants do not assert here.

The court finds, based on the language of the "Waiver" paragraph of the Guaranty, that the defendants did not waive their right to assert an anticipatory-breach affirmative defense. The language "all rights and remedies accorded by applicable law to guarantors" appears to focus on rights that guarantors may assert directly, not on rights of debtors that guarantors may assert indirectly. This reading is supported by the list of illustrative defenses that makes up the rest of the paragraph. For example, the defendants waived "any right to require [JMT] to proceed against [Johnson Plate] or any other person or to pursue any other remedy in [JMT's] power before proceeding against such Guarantor." This simply means that the defendants cannot argue that the Guaranty actually is a so-called "guaranty of collection" (or "unconditional guaranty"), rather than a "guaranty of payment" (or "unconditional guaranty"). This is a defense that would belong to a guarantor personally and would not be a defense belonging to an underlying debtor. The defendants also waived their right to assert "any defense based upon any statute or rule of law which provides that the obligation of a surety must be neither larger in amount nor in other respects more burdensome than that of the principal." This, too, is a defense that would belong to a guarantor personally. The other listed defenses are similarly personal to a guarantor.

The waiver language in the two opinions relied upon by JMT is not so limited. The waiver language in *Holmes* included waiver of defenses relating to the illegality or unenforceability of the "indebtedness represented by the note as against Borrower or Guarantor based on usury or other legal defenses, statutory or otherwise." 49 S.W.3d at 264-65 (emphasis added). And the waiver language in *Hart* clearly encompassed defenses based on the debtor's claim of non-liability under the note. 727 S.W.2d at 727.

For these reasons, the court concludes that the defendants did not waive their right to assert an anticipatory-breach affirmative defense.

JMT also argues that the defendants have not provided sufficient evidence to support their

claim that JMT anticipatorily breached the Note. JMT's first point is that Douglas Johnson already admitted that Johnson Plate's $215,000 debt to JMT is not subject to any defenses because he listed the debt on Johnson Plate's bankruptcy schedules but did not list it as contingent, unliquidated, or disputed.

The opinion JMT cites for this argument—*Larson v. Groos Bank, N.A.*—does not compel this result. *See* 204 B.R. 500 (W.D. Tex. 1996). In that case, the plaintiff Floyd Larson filed suit against defendants CSC Credit Services, Inc. and Groos Bank, N.A. *Id.* at 501. Mr. Larson subsequently filed a Chapter 7 bankruptcy petition. *Id.* In the schedules that Mr. Larson signed as part of his bankruptcy action, he was required to list "other contingent and unliquidated claims of every nature" that he might have. *Id.* at 502. In response, Mr. Larson listed "none." *Id.* The defendants to Mr. Larson's civil suit thereafter argued that his civil claims necessarily failed because his statement in his bankruptcy schedules was a judicial admission that he suffered no damages. *Id.*

The district court agreed with the defendants. *Id.* It first noted that, "[g]enerally, factual assertions in pleadings, which have not been superseded by amended pleadings, are judicial admissions against the party that made them." *Id.* (citing *White v. ARCO/Polymers, Inc.*, 720 F.2d 1391, 1396 (5th Cir. 1983)). It then went on to state that, "[s]pecifically, statements in bankruptcy schedules are executed under penalty of perjury and when offered against a debtor are eligible for treatment as judicial admissions." *Id.* (citing *In re Gervich*, 570 F.2d 247, 253 (8th Cir. 1978); *In re Musgrove*, 570 F.2d 247, 253 (Bankr. N.D. Ga. 1978)). "Therefore," the district court concluded, "[Mr.] Larson's statement of 'None' is a judicial admission that he placed no value on this instant lawsuit. In other words, [Mr.] Larson judicially admitted that he suffered no damages." *Id.* And because proof of damages is an element of his civil claim, the court entered summary judgment in favor of the defendants. *Id.* at 502-03.

This case is different. Here, Johnson Plate is the debtor in the bankruptcy action. The schedules submitted in that bankruptcy action are Johnson Plate's. Douglas Johnson signed them, but he did so in his capacity as President of Johnson Plate (the debtor), not in his individual capacity. But it is in his individual capacity (as guarantor) that Douglas Johnson is now sued. JMT

United States District Court
Northern District of California

1    urges the court to use statements that Johnson Plate made in its bankruptcy schedules as judicial

2    admissions against Douglas Johnson in his individual capacity to dispose of his affirmative

3    defense based on JMT's conduct. *Larson* simply does not extend that far, and JMT has not cited

4    (and the court has not found) any authority going that far either.[8] The court thus rejects JMT's

5    argument that the defendants already admitted that their affirmative defense has no merit.

6         JMT also argues that the defendants have not "come forward with reliable and sufficient

7    evidence proving" their anticipatory-defense affirmative defense. (Motion, ECF No. 23 at 14.) But

8    this is not the defendants' burden at this stage. As the non-moving parties, the defendants do not

9    need to "prove" their affirmative defense at the summary judgment stage. Instead, it is their

10   burden to produce evidence supporting its claims or defenses. *Nissan Fire & Marine Ins. Co., Ltd.*,

11   210 F.3d at 1103. To meet that burden, the defendants may not rest upon mere allegations or

12   denials of the adverse party's evidence, but instead must produce admissible evidence that shows

13   there is a genuine issue of material fact for trial. *Devereaux*, 263 F.3d at 1076. If the defendants

14   produce enough evidence to create a genuine issue of material fact, JMT's motion must be denied.

15   *Nissan Fire & Marine Ins. Co., Ltd.*, 210 F.3d 1103. Only if the defendants do not produce

16   evidence to show a genuine issue of material fact is JMT entitled to summary judgment. *Celotex*,

17   477 U.S. at 323; *Nissan Fire & Marine Ins. Co., Ltd.*, 210 F.3d 1103.

18        JMT says that the defendants have not made a sufficient showing with regard to JMT's alleged

19   anticipatory breach of the Note, the causal link between JMT's conduct and the defendants'

20   inability to pay, and the extent of any damages attributable to JMT's conduct. (*See* Motion, ECF

21   No. 23 at 14-15; Reply, ECF No. 31 at 7-10.) The defendants argue otherwise in their opposition

22   and submit some evidence, but even considering this issue at this time is problematic. As the court

23   noted above, JMT filed this early summary-judgment motion on the day of the initial case

24   management conference, before the parties had commenced discovery. It is unfair to argue in a

---

[8] It is an unremarkable proposition that a debtor's failure to list a preexisting claim in a bankruptcy
26   schedule estops that debtor from later asserting that claim. *See, e.g.*, *Hay v. First Interstate Bank of
Kalispell, N.A.*, 978 F.2d 555, 557 (9th Cir. 1992) (failure to give notice of a potential claim in
27   bankruptcy schedules and disclosure statements estops the debtor from prosecuting that claim).
The court cannot see how that proposition extends to preclude an affirmative defense asserted by
28   someone who is not the debtor in the bankruptcy proceeding.

United States District Court
Northern District of California

1    motion for summary judgment that the non-moving party has not provided sufficient evidence

2    when discovery has not even been commenced. Only after discovery occurs can the court

3    conclusively determine if a non-moving party has met its burden to provide admissible evidence

4    that shows a genuine issue of material fact. *See Celotex*, 477 U.S. at 322 (Rule 56 "mandates the

5    entry of summary judgment, <u>after adequate time for discovery</u> and upon motion, against a party

6    who fails to make a showing sufficient to establish the existence of an element essential to that

7    party's case, and on which that party will bear the burden of proof at trial.") (emphasis added); *id.*

8    at 326 (premature motions for summary judgment can be denied if the non-moving party has not

9    had an opportunity to conduct full discovery); *Nissan Fire & Marine Ins. Co., Ltd.*, 210 F.3d

10   1105-06 ("The nonmoving party, of course, must have had sufficient time and opportunity for

11   discovery before a moving party will be permitted to carry its initial burden of production by

12   showing that the nonmoving party has insufficient evidence.") (citing *Celotex*, 477 U.S. at 326).

13   For now, then, the court rejects JMT's argument that the defendants have not sufficiently

14   supported their anticipatory-breach affirmative defense. JMT may raise this argument again in a

15   summary judgment motion after the close of discovery.

16       The court denies JMT's motion for summary judgment with respect to the defendants'

17   anticipatory-breach affirmative defense.

18                                              *        *

19                                       **CONCLUSION**

20       For the reasons explained above, the court grants in part and denies in part JMT's motion for

21   summary judgment.

22       This resolves ECF No. 23.

23       **IT IS SO ORDERED.**

24   Dated: June 19, 2015

25                                        _____

26                                        LAUREL BEELER
                                          United States Magistrate Judge
27

28

United States District Court
Northern District of California